EDELSBERG LAW, P.A.
Scott Edelsberg (SBN 330990)
scott@edelsberglaw.com
1925 Century Park E #1700
Los Angeles, California 90067
Telephone: (310) 438-5355

*Attorneys for Plaintiffs and the Proposed Classes*

*(Additional Attorneys Listed on Signature Page)*

Kevin Minnick (SBN: 269620)
kminnick@spertuslaw.com
Spertus Landes & Josephs
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Tele No.: (213) 205-6520
Fax No.: (213) 205-521

BOWMAN AND BROOKE LLP
Vincent Galvin (SBN: 104448)
Vincent.galvin@bowmanandbrooke.com
Lauren O. Miller (SBN: 279448)
Lauren.Miller@bowmanandbrooke.com
1741 Technology Drive, Suite 200
San Jose, California 95110
Tel No.: (408) 279-5393
Fax No.: (408) 279-5845

*Attorneys for Defendant
Toyota Motor Sales, U.S.A., Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ELLIOT NAZOS, *et al.*, individually and on behalf of all others similarly situated, <br><br>  Plaintiffs, <br><br> v. <br><br> TOYOTA MOTOR SALES, U.S.A., INC., <br><br>  Defendant. | Case No. 2:22-cv-02214-PA(Ex) <br><br> **[PROPOSED] STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI** <br><br> Assigned to: Hon. Percy Anderson |

This Stipulated Protocol for Producing Documents and ESI (The "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the Plaintiffs and Defendant (each individually a "Party" or collectively "Parties"), in the above captioned litigation.

**A.   Definitions**

1. "Confidentiality Designation" means the legend affixed to documents or ESI for confidential or highly confidential information as permitted by, and subject to, the terms of the Protective Order agreed to by the Parties and/or entered by the Court in this litigation.

2. "Document" is defined by Federal Rules of Civil Procedure 26 and 34.

3. "Electronically stored information" or "ESI" is defined by Federal Rules of Civil Procedure 26 and 34.

4. "Hard-Copy Document" means Documents existing in paper form at the time of collection, even if collection happened at a date prior to collection for this litigation.

5. "Hash Value" means the unique numerical identifier assigned to a file, a group of files, or a portion of a file, based on the standard mathematical algorithms MD5, SHA-1, or SHA256, applied to the characteristics of the data set.

6. "Native Format" means an electronic document's associated file structure created by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

7. "Metadata" means information embedded in or associated with a native file that describes the characteristics, origins, usage, and/or validity of the electronic file.

8. "Producing Party" means any Party or non-party that produces Documents or ESI pursuant to this ESI Protocol.

9. "Receiving Party" means any Party or non-party that receives Documents or ESI produced in this litigation.

10.     "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**B.    Search**

1.    <u>Search Terms</u>. A Producing Party that elects to run search terms, whether in English or in a foreign language, shall provide to the Receiving Party a list of search terms the Producing Party proposes to be used.[1]  Following receipt of such search terms, the Receiving Party will identify in writing, within 7 days, any additional terms or proposed changes to the proposed search terms.  Within 14 days of receipt, the Producing Party will identify all terms proposed by the Requesting Party that it objects to using ("Disputed Search Terms") and will provide information sufficient to establish the basis for its objection to each Disputed Search Term.  Within 7 days of receipt of the list of Disputed Terms, the Parties will meet and confer in a good faith attempt to reach a final list of mutually agreeable search terms (the "Agreed Search Terms").

2.    <u>Foreign Language Search Terms</u>. The Producing Party shall take reasonable steps to confirm if a custodian or noncustodial data source(s) that is to be subjected to search terms to identify potentially relevant documents will need to be searched in any language other than English. To the extent the Producing Party uses search terms on a given dataset, the Producing Party will run searches using English language terms and the foreign language terms, as appropriate.

**C.    Technology Assisted Review**

Any Producing Party that intends to use Technology Assisted Review ("TAR") to (a) determine the relevance or non-relevance of documents for production purposes, and/or (b) cull a set of documents that will thereafter be reviewed by humans to

---

[1] The Producing Party agrees to consider a Receiving Party's request for additional custodians, and to meet and confer with the Receiving Party in a good faith attempt to reach agreement regarding the Receiving Party's request.

27647039

determine relevance or non-relevance for production purposes, shall disclose such intent to use TAR to the Receiving Party in advance of its use so the Parties may meet and confer regarding such TAR review. The parties will meet and confer within 7 days of such disclosure. Any remaining disputes must be brought to the Court pursuant to L.R. 37-2 within 14 days of the meet and confer.

### D. Hard-Copy Documents

Documents that exist only in Hard-Copy format may be produced by the Producing Party in Hard-Copy format. To the extent the Producing Party elects to produce Hard-Copy format documents electronically, such Hard-Copy documents will be scanned or otherwise converted into electronic form in the following format:

1. <u>TIFFs</u>. All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size. Each image file should have a unique file name which shall be the Bates number of the page. Each image shall be branded with a Bates number and confidentiality designation. Reasonable efforts shall be made so TIFFs show all text and images that would be visible to a user of the Hard-Copy Documents.

2. <u>Unitization of Paper Documents</u>. In scanning Hard-Copy Documents, distinct documents should be logically unitized for production. Therefore, when scanning or producing Hard-Copy Documents, documents should be scanned as they are maintained. Distinct documents should not be merged into a single record, and single documents should not be split into multiple records. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post-it notes shall be scanned both with and without the Post-it.

3. <u>File/Binder Structures (Parent-Child Unitization)</u>. Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each

1. distinct document shall be unitized, but maintained together in a parent-child relationship, where practicable.

4. <u>Load Files</u>. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

5. <u>Objective Coding Fields</u>. The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

6. <u>OCR Text Files</u>. The document level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated. The text files will not contain the redacted portions of the documents. OCR software should be set to the highest quality setting during processing. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

**E.  Electronically Stored Information**

The Parties will produce ESI in TIFF format according to the following specifications:

1. All TIFF formatted documents will be single page, Group 4 TIFF at 300 x 300 dpi resolution and 8½ x 11-inch page size, except for documents requiring different resolution or page size.

2. An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

3. Each imaged version of an electronic document will be created directly from the original electronic document.

4.     TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed by the Producing Party or ordered by the Court. Where possible, word documents that have tracked changes or comments shall be imaged and produced in color and with margin comments visible in the image. Reasonable requests for the production of documents in color shall not be unreasonably refused. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher. In the event that a TIFF file is objectively illegible or difficult to read, the parties agree to meet and confer in an attempt to identify a reasonable solution.

5.     All TIFF files are to be provided with an accompanying searchable text (.TXT) file. Where possible, such TXT file should be extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all tracked changes (comments, deletions, and revision marks, including the identity of the person making the deletion, revision, or comment, and the date and time thereof), speaker's notes, and text from hidden worksheets, slides, columns and rows. In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages. Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

6.     Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The Parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description | Example/Format |
|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | Smith, Joe |
| Duplicate Custodian **(for global deduplication)** | Name of duplicate custodian(s) of email(s) or files produced. | Smith, Joe; Smith, Jane |
| BegBates | The Bates Number of the first page of the document (including Prefix) | ABC00000001 |
| EndBates | The Bates Number of the last page of the document (including Prefix) | ABC00000003 |
| BegAttach | Beginning Bates Number of the first page of the first document in a document family range (only in emails with attachments) | ABC00000001 |
| EndAttach | Ending Bates Number of the last page of the last document in the document family range (only in emails with attachments) | ABC00000008 |
| Volume | The name of the CD or Hard Drive for ESI, or collection, binder, cabinet for hard copy docs (i.e., the volume ID). | VOL001 |

| Field Name | Field Description | Example/Format |
|---|---|---|
| From | From field extracted from an email message | Joe Smith <joesmith@email.com> |
| Author | Author field extracted from the metadata of a non-email document | Smith, Joe |
| To | To or Recipient extracted from an email message | Jane Smith <janesmith@email.com> |
| Cc | Carbon Copy ("Cc") field extracted from an email message | John Smith <johnsmith@email.com> |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | Mary Smith <marysmith@email.com> |
| EmailSubject | Subject line extracted from an email message | |
| Attachment | The file name(s) of documents attached to an email. Separated by a semicolon. | |
| Email Attachment Count | The number of attachments to a parent. | Numeric |
| Filename | File name — Original name of file as appeared in original location | |
| File Author | The author of a document from extracted metadata. | Smith, John |
| Title | Title field extracted from the metadata of a non-email document | |
| DateSent | Sent date and time of an email message (mm/dd/yyyy hh:mm:ss format) (a given | mm/dd/yyyy hh:mm:ss |

| Field Name | Field Description | Example/Format |
|---|---|---|
| | email will have either a DateSent or Date Recvd, but not both) | |
| DateRcvd | Received date and time of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | mm/dd/yyyy hh:mm:ss |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | mm/dd/yyyy |
| DateLastModified | The application recorded time on which the document was last modified | mm/dd/yyyy |
| Email Importance | Email Importance Flag | Normal, Low, High |
| TimeZone Processed | The time zone shall be UTC for all documents. | UTC |
| FileType | The type of document | Email, hard copy, loose efile. |
| FilePath | File path storage location of the document or email if the source application allows for the creation of folders | |
| File Manager/ Application Description | Native file application. | Microsoft Excel, Word, etc. |
| File Extension | The file extension of the document. | Xls |
| File Last Author | The name of the last individual to save the file. | Smith, John |
| Date Appointment Start | Date of calendar appointment entry. | MM/DD/YYYY hh:mm:ss |

27647039

8

[PROPOSED] STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

| Field Name | Field Description | Example/Format |
|---|---|---|
| Date Appointment End | End date of calendar appointment entry. | MM/DD/YYYY hh:mm:ss |
| PgCount | The number of pages of the document, excluding the pages of documents in the same family | Numeric |
| FileSize | The file size of a document (including embedded attachments). | |
| Hidden Data | Whether hidden data exists in the doc. For example, hidden Excel cells or PowerPoint slides. | Y, N, Blank |
| Duplicate FilePath | Folder locations of documents held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons and include originating custodian name. | |
| NativeLink (if natives are exchanged) | The relative path to any files produced in native format | D:\NATIVES\ ABC00000005.xls |
| TextLink (if text is exchanged) | Relative path to any OCR/extracted text files in the production set. . | D:\TEXT\ ABC00000001.txt |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | |
| Confidentiality Designation | Confidentiality Designation assigned to the document by counsel for the Producing Party | Confidential, Highly Confidential |

| Field Name | Field Description | Example/Format |
|---|---|---|
| RedactionField | When document contains redactions, field will be populated "Y" | Y |
| RedactionBasis | The basis for any redaction in the document. | |
| Translated | Indicates whether the document has been translated from a foreign language. | Yes |

ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification consistent with the requirements provided in this ESI Protocol.

7. <u>Bates Numbers</u>. Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume containing such files. All Bates Numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates Number. Any numbers with less than 8 digits will be front padded with zeroes to reach the required 8 digits. All ESI produced in TIFF shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not conceal or interfere with any information from the source document, where possible. The Parties shall meet and confer to attempt to resolve any issues with documents or ESI that cannot be technically processed (e.g., unsupported file formats, file corruptions, inaccessible password-protected files). If a member of a document family that has otherwise been determined to include a responsive document cannot be technically processed, those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slipsheet identifying the technical problem.

8. <u>Parent-ChildRelationships</u>. Parent-child relationships within a document family (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Non-privileged

27647039

10

attachments to an e-mail or embedded files or links, and Hard Copy Documents attached or appended to Hard Copy Documents, must be mapped to their parent by the beginning Bates Number and immediately follow that parent file in the sequence of the production. E-mail attachments and embedded files or links must contain "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates Number of the parent documents and ending number of the last attachment must be populated for each child and parent document. Absent a claim of privilege, responsive family members will be produced consecutively with the responsive related parent e-mail.

9. <u>Native Format Production Documents</u>.

    a. The Parties will produce the following ESI types in native file format: Excel spreadsheets, Audio/video files, and Animations.

    b. Any document produced in native format will be produced according to the following specifications:

        i. A Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file.

        ii. Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file.

    c. Production Of Structured Data: Where a discovery request requires production of structured data and upon a reasonable request by the Receiving Party, the Parties shall meet and confer regarding appropriate format of production.

    d. For each document produced in Native Format, a Producing Party shall also produce a corresponding cover page in TIFF, specifying that the document has been "produced in native format" and endorsed with the

Bates Number and Confidentiality Designation, if any, which will be inserted into the image population in place of the native file.

10. <u>Embedded Objects</u>. Embedded files to responsive documents need not be produced as separate documents. Examples of Embedded files include, but are not limited to, logo graphics in email signature lines (usually *.PNG or another image file format) and images, tables, or graphics in presentation software like Microsoft PowerPoint.

11. <u>Deviation from Production Specifications</u>. If a particular document or category of documents would be burdensome to produce in the format specified herein, the Producing Party shall promptly raise the issue to the Receiving Party. Upon reasonable request made by the Receiving Party, the Parties shall confer regarding producing the document or category of documents in an alternate format.

12. <u>Use at Deposition</u>. Any document produced in Native Format that a Party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding TIFF cover page, if available, endorsed with the document's Bates Number and Confidentiality Designation.

13. <u>Hyperlinks</u>. Where responsive documents and ESI contain responsive hyperlinked documents, the parties will meet and confer to find a mutually acceptable solution for identifying the hyperlinked document.

14. <u>Communication Applications and Ephemeral Messaging:</u> The parties agree to meet and confer regarding the parameters governing the search and collection of such data.

F. **Employee Personal Devices**

In the event a Producing Party claims it does not have possession, custody, or control of an employee personal device containing potentially relevant ESI, the Producing Party shall promptly notify the Receiving Party.

### G. Translations.

To the extent a Producing Party produces documents created in a foreign language, the Producing Party will produce any translations created in the ordinary course of business and of which the Producing Party is aware, provided they are responsive and non-privileged.

### H. Data Load Files/Cross-Reference Files.

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats. Either standard Concordance (DAT). All image data should be delivered with a corresponding image load file in one of tree formats; standard IPro (LFP), Opticon (OPT). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

### I. Deduping Documents, De-NISTing Documents, and Most Inclusive Email

1. <u>Deduping Documents</u>. To the extent exact duplicate documents reside within a Party's ESI, the Producing Party may produce only a single, de-duplicated copy of a responsive document. To the extent a Party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 Hash Values. Where any such documents have attachments, Hash Values must be identical for both the document plus-attachment (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone. Attachments to parent documents may not be deduplicated against a duplicate standalone version of the attachment, and standalone versions of documents may not be suppressed if a duplicate version exists as an attachment.

2. A Producing Party may de-duplicate documents across all custodians. This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that the Producing Party populates a metadata field that identifies each custodian who had a copy of the produced document (the "Duplicate Custodian" field).

3. The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents. De-duplication shall not break apart families. Attachments to emails shall not be eliminated from the parent email because they are duplicative of a document or email.

4. <u>De-Nisting</u>. Each Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. System and program files defined on the NIST list need not be processed, reviewed, or produced. The Parties may suppress container files (.ZIP, .PST, .RAR) that do not reflect substantive information prior to production.

5. <u>Most Inclusive Email Productions</u>. Email threading analysis may be used to reduce the volume of emails reviewed and produced, provided the Producing Party discloses that it is using e-mail thread analysis. "E-mail thread analysis" means that where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message ("Last In Time E-Mail") and need not separately produce earlier, less inclusive e-mail messages or "thread members" that are fully contained within the Last In Time E-Mail. An earlier e-mail is fully contained in the Last In Time E-Mail only if the Last In Time E-mail includes all of the prior or lesser-included emails, including attachments and identical senders and recipients, for that branch of the email thread.

6. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages. For avoidance of doubt, if a thread member contains any additional data that is not contained in the Last In Time E-mail (including without limitation attachments or BCC recipients), it is not a less-inclusive e-mail and must be separately produced.

**J.   Redactions**

1.   If a producing party intends to redact material other than content that is attorney-client-privileged, work-product-protected, or personally identifiable information,[2] the parties shall meet and confer regarding the basis and scope of the redactions. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction. If any document is redacted, this should be noted in the "RedactionField" (Y/N), listed in Section E, and the "RedactionBasis" field shall indicate the basis for redaction (e.g., "A/C Privilege").

**K.   Third-Party Productions**

A Party that issues a non-party subpoena shall include a copy of this Stipulation with the subpoena and state that the Parties in the litigation have requested that non-parties produce documents in accordance with the specifications set forth herein. The issuing Party shall produce a copy to all other Parties of any documents (including ESI and any Metadata) obtained under subpoena to a non-party within 10 business days of receipt of such documents.

**L.   Production Media**

The Parties shall produce documents electronically via a secure File Transfer Protocol ("FTP") or such other readily accessible computer or electronic media as the parties may agree (the "Production Media").

**M.   Compliance And Disputes**

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision(s) of this ESI Protocol. If a Producing Party identifies a particular circumstance where it cannot comply with this Protocol, such Party shall promptly inform the Receiving Party in writing the

---

[2] Any redactions for PII shall be made consistent with Fed. R. Civ. P. 5.2(a), so that it is clear from the face of the document that the redaction has been properly applied.

reason(s) for, and circumstances surrounding, the need to vary from this Protocol. In the event that the Parties cannot reach agreement on an appropriate deviation from this Protocol, the matter may be submitted to the Court for determination.

### N. Modification

This Protocol may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**STIPULATED AND AGREED TO on June 21, 2023.**

        **BLEICHMAR FONTI AND AULD LLP**

        By:  *Lesley E. Weaver*
        Lesley E. Weaver (SBN 191305)
        lweaver@bfalaw.com
        Joshua D. Samra (SBN 313050)
        jsamra@bfalaw.com
        1330 Broadway, Suite 630
        Oakland, CA 94612
        Telephone: (415) 445-4003
        Facsimile: (415) 445-4020

        **EDELSBERG LAW, P.A.**
        Scott Edelsberg (SBN 330990)
        scott@edelsberglaw.com
        1925 Century Park E #1700
        Los Angeles, California 90067
        Telephone: (310) 438-5355

        **KOPELOWITZ OSTROW**
        **FERGUSON WEISELBERG GILBERT**
        Kristen Lake Cardoso (SBN 338762)
        cardoso@kolawyers.com
        Jeff Ostrow (admitted *pro hac vice*)
        ostrow@kolawyers.com
        One West Las Olas, Suite 500
        Fort Lauderdale, FL 33301
        Telephone: (954) 525-4100

Facsimile: (954) 525-4300

**GORDON & PARTNERS, P.A.**
Steven G. Calamusa (admitted *pro hac vice*)
scalamusa@fortheinjured.com
Geoff S. Stahl (admitted *pro hac vice*)
gstahl@fortheinjured.com
Rachel A. Bentley (admitted *pro hac vice*)
rbentley@fortheinjured.com
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050

**LAW OFFICE OF DENNIS O. COHEN, PLLC**
Dennis O. Cohen (admitted *pro hac vice*)
dennis@denniscohenlaw.com
157 13th Street
Brooklyn, NY 11215
Telephone: (646) 859-8855

*Attorneys for Plaintiffs and the Proposed Classes*


By:   Kevin Minnick
Vincent Galvin
**Bowman and Brooke LLP**
Vincent.galvin@bowmanandbrooke.com
1741 Technology Drive, Suite 200
San Jose, CA 95110

Kevin Minnick
**Spertus Landes & Josephs**
kminnick@spertuslaw.com
617 West 7th Street, Suite 200
Los Angeles, CA 90017

*Attorneys for Defendant Toyota Motor Sales, U.S.A., Inc.*

27647039

17

# ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the e-filing counsel attests that all other signatories listed, and on whose behalf this filing is jointly submitted, concur in the filing's content, and have authorized the filing.

Dated: June 21, 2023                    /s/ *Lesley E. Weaver*
                                        Lesley E. Weaver

**IT IS SO ORDERED.**

DATED: _____

                Honorable Charles F. Eick
              UNITED STATES MAGISTRATE JUDGE